## DeGREGORY v. ATTORNEY GENERAL OF NEW HAMPSHIRE.

No. 396.   Argued February 24, 1966.—Decided April 4, 1966.

*Howard S. Whiteside* argued the cause and filed a brief for appellant.

*R. Peter Shapiro,* Assistant Attorney General of New Hampshire, argued the cause for appellee. With him on the brief were *William Maynard,* Attorney General, and *Joseph F. Gall,* Special Assistant Attorney General.

Opinion of the Court by MR. JUSTICE DOUGLAS, announced by MR. JUSTICE BRENNAN.

This is the third time that the constitutional rights of appellant challenged in investigations by New Hampshire into subversion have been brought to us.[1] The present case stems from an investigation by the Attorney General of the State under Rev. Stat. Ann. § 588:8–a (1965 Supp.), enacted in 1957, which provides in part:

> "At any time when the attorney general has information which he deems reasonable or reliable relating to violations of the provisions of this chapter he shall make full and complete investigation thereof and shall report to the general court the results of this investigation, together with his recommendations, if any, for legislation. . . . [T]he attorney general is hereby authorized to make public such information received by him, testimony given before him, and matters handled by him as he deems fit to effectuate the purposes hereof."

The "violations" cover a wide range of "subversive" activities designed to "overthrow, destroy or alter, or to assist in the overthrow, destruction or alteration of, the constitutional form of the government . . . of the

---

[1] *DeGregory* v. *Wyman,* 360 U. S. 717; *DeGregory* v. *Attorney General,* 368 U. S. 19. After remand of the latter case appellant purged himself of contempt by answering in the negative the question "Are you presently a member of the Communist Party?" Subsequently, new hearings were held and it is out of them that the present case arises.

state of New Hampshire, or any political subdivision . . . by force, or violence." [2] § 588:1.

Appellant was willing to answer questions concerning his relationship with and knowledge of Communist activities since 1957, and in fact he did answer them.[3] But he refused to answer a series of questions put him concerning earlier periods.[4] His refusal, not being based on

[2] Although the Act purports to extend its protection to the Federal Government as well, that field has been pre-empted. See *Pennsylvania* v. *Nelson*, 350 U. S. 497.

[3] "I am not now a member of the Communist Party and have not been at any time since this authority under which I was subject has been on the statute books; that I have no knowledge of any communistic activities in New Hampshire during this period, or any violations of law during this period of six and one-half years. In fact, I have not even been aware of the existence of any Communist Party in the State of New Hampshire at any time that this authority has been on the statute books."

[4] "Have you ever been a member of the Communist Party?

"When did you join the Communist Party?

"Were you a paid member of the Communist Party?

"Were you an officer of the Communist Party?

"Did you ever have access to or control of membership or financial records of the Communist Party in New Hampshire?

"Did you attend Communist Party meetings in New Hampshire?

"To what extent did Communist Party District I in Boston, Massachusetts, have control over the party's activities in New Hampshire?

"Did you ever attend any Communist Party meetings in New Hampshire wherein any person advocated to . . . overthrow, destroy or alter the Government of the State of New Hampshire, by force or violence?

"Did you ever attend any Communist Party meetings in New Hampshire where any person advocated, abetted, advised or taught by any means the commission of an act to constitute a clear and present danger to the security of this state?

"Did you or any person known to you destroy any books, records or files, or secrete any funds in this state belonging to or owned by the Communist Party?

"Did you at any time participate or assist in the formation of or contribute to the support of the Communist Party in New Hampshire?"

the Fifth Amendment, raised important questions under the First Amendment, made applicable to the States by the Fourteenth Amendment. He was committed to jail for a period of one year or until he purged himself of contempt. That judgment was affirmed by the New Hampshire Supreme Court. 106 N. H. 262, 209 A. 2d 712. The case is here on appeal. 382 U. S. 877.

The substantiality of appellant's First Amendment claim can best be seen by considering what he was asked to do. Appellant had already testified that he had not been involved with the Communist Party since 1957 and that he had no knowledge of Communist activities during that period. The Attorney General further sought to have him disclose information relating to his political associations of an earlier day, the meetings he attended, and the views expressed and ideas advocated at any such gatherings.[5] Indeed, the Attorney General here relied entirely upon a 1955 Report on Subversive Activities in New Hampshire to justify renewed investigation of appellant. The Report connects appellant with the Communist Party only until 1953, over 10 years prior to the investigation giving rise to the present contempt.

On the basis of our prior cases, appellant had every reason to anticipate that the details of his political associations to which he might testify would be reported in a pamphlet purporting to describe the nature of subversion in New Hampshire. (See *Uphaus* v. *Wyman,* 360 U. S. 72, 88–95, BRENNAN, J., dissenting.) Admittedly, "exposure—in the sense of disclosure—is an inescapable incident of an investigation into the presence of subversive persons within a State." *Uphaus* v. *Wyman, supra,* at 81. But whatever justification may have supported such exposure in *Uphaus* is absent here; the

---

[5] Prosecution for these activities was apparently barred by the six-year state statute of limitations, N. H. Rev. Stat. Ann. § 603:1, long before the investigation in 1964.

staleness of both the basis for the investigation and its subject matter makes indefensible such exposure of one's associational and political past—exposure which is objectionable and damaging in the extreme to one whose associations and political views do not command majority approval.[6]

"The First Amendment may be invoked against infringement of the protected freedoms by law or by lawmaking." *Watkins* v. *United States,* 354 U. S. 178, 197. Investigation is a part of lawmaking and the First Amendment, as well as the Fifth, stands as a barrier to state intrusion of privacy. No attack is made on the truthfulness of the questions answered by appellant stating that he does not serve in a subversive role and lacks knowledge of any current subversion. There is no showing of "overriding and compelling state interest" (*Gibson* v. *Florida Legislative Comm.,* 372 U. S. 539, 546) that would warrant intrusion into the realm of political and associational privacy protected by the First Amendment. The information being sought was historical, not current. Lawmaking at the investigatory stage may properly probe historic events for any light that may be thrown on present conditions and problems. But the First Amendment prevents use of the power to investigate enforced by the contempt power to probe at will and without relation to existing need. *Watkins* v. *United States, supra,* at 197–200. The present record is devoid of any evidence that there is any Communist movement in New Hampshire. The 1955 Report deals primarily with "world-wide communism" and the Federal Government. There is no showing whatsoever of present danger of sedition against the State itself, the only area

---

[6] See *Gibson* v. *Florida Legislative Comm.,* 372 U. S. 539, 543–544; *Bates* v. *Little Rock,* 361 U. S. 516, 523–524; *NAACP* v. *Alabama,* 357 U. S. 449, 462–463. Cf. *Shelton* v. *Tucker,* 364 U. S. 479, 485–487; *Talley* v. *California,* 362 U. S. 60, 64–65.

to which the authority of the State extends.[7]  There is thus absent that "nexus" between appellant and subversive activities in New Hampshire which the Court found to exist in *Uphaus* v. *Wyman, supra,* at 79.  New Hampshire's interest on this record is too remote and conjectural to override the guarantee of the First Amendment that a person can speak or not, as he chooses, free of all governmental compulsion.  *Reversed.*

MR. JUSTICE HARLAN, whom MR. JUSTICE STEWART and MR. JUSTICE WHITE join, dissenting.

The Court appears to hold that there is on the record so limited a legislative interest and so little relation between it and the information sought from appellant that the Constitution shields him from having to answer the questions put to him.[*]  New Hampshire in my view should be free to investigate the existence or nonexistence of Communist Party subversion, or any other legitimate subject of concern to the State, without first being asked to produce evidence of the very type to be sought in the course of the inquiry.  Then, given that the subject of investigation in this case is a permissible one, the appellant seems to me a witness who could properly be called to testify about it; I cannot say as a constitutional matter that inquiry into the current operations of the local Communist Party could not be advanced by knowledge of its operations a decade ago.  Believing that "[o]ur function . . . is purely one of constitutional adjudication" and "not to pass judgment upon the general wisdom or efficacy" of the investigating activities under scrutiny, *Barenblatt* v. *United States,* 360 U. S. 109, 125, I would affirm the judgment of the Supreme Court of New Hampshire.

---

[7] *Pennsylvania* v. *Nelson, supra,* n. 2.

[*]No plea of a privilege against self-incrimination was interposed by the witness.