20 N.Y.2d 54 (1967)
In the Matter of Peter Bell, Appellant,
v.
Waterfront Commission of New York Harbor, Respondent.
Court of Appeals of the State of New York.
Argued April 11, 1967.
Decided May 31, 1967.
Michael B. Standard for appellant.
Irving Malchman, William P. Sirignano and Anthony L. Piazza for respondent.
Sanford M. Katz for New York Civil Liberties Union, amicus curiae.
Judges VAN VOORHIS and BERGAN concur with Chief Judge FULD; Judge KEATING concurs in result only; Judges BURKE, SCILEPPI and BREITEL dissent and vote to affirm without prejudice to an application by appellant for reinstatement.
*57 Chief Judge FULD.
This is an appeal from an order of the Appellate Division confirming the determination of the Waterfront Commission revoking the petitioner's registration as a longshoreman. The petitioner, 33 years old, had been a long-shoreman since 1952, when he was 19. In 1960, desirous of improving his employment status, he applied to the respondent Commission for registration as a checker.[1] Starting in October, 1961, he was called before one of the Commission's lawyers for a series of interviews relating to his application. Although notified that he had the right to be represented by counsel, he chose to appear at the interviews alone and was questioned under oath about alleged subversive activities during the late 1940s when he was 15 or 16 years old. The petitioner denied, or claimed he could not recall, having belonged to, held office in, known officers of, or participated in the activities of the Young Progressives of America (YPA) or the American Youth for Democracy (AYD), the latter an organization cited by the Attorney General of the United States in 1947 as "subversive."
In November of 1963, the Commission ordered a hearing to determine whether the petitioner had committed "fraud, deceit and misrepresentation" when questioned about his connections with the above-mentioned organizations and, if so, whether to revoke, cancel or suspend his registration as a longshoreman and grant or deny his application as a checker. At the hearing, where the petitioner was represented by counsel, the only witness, one Herbert Romerstein, testified that from 1947 to 1949 he was a member of the Communist party as well as a member and officer of YPA and AYD and that the petitioner not only had been a member of AYD present at meetings open only to "county officers" and "representatives" of AYD clubs but that he had been a most active participant in its and YPA affairs.
The Commission, finding the petitioner guilty of "fraud, deceit and misrepresentation" in connection with the testimony he had given under oath, issued an order revoking his registration as a longshoreman and denying his application for registration *58 as a checker. The petitioner thereupon brought this article 78 proceeding in the Supreme Court to annul that order and to restore his registration as a longshoreman.[2]
Under the terms of the Waterfront Commission Act, the agency is empowered to revoke the registration of any longshoreman "for such period of time as it deems in the public interest" (L. 1953, ch. 882, pt. I, art. VIII, § 5) if he has committed "[f]raud, deceit or misrepresentation in connection with * * * any interview, hearing or proceeding conducted by the commission" (L. 1953, ch. 882, § 5-h, subd. 3, added by L. 1954, ch. 220, § 2).[3] There is more than sufficient evidence in the record to establish that the petitioner lied when he denied, or claimed he could not remember, having belonged to, and attended meetings of, AYD and YPA when he was a teenager. Considering the extent to which he engaged in such activities, the Commission was certainly warranted in concluding that his testimony was incredible to the extent that he could not remember having done any of them at all. Accordingly, the Commission was justified in determining that his denials and lapses of memory were the products of "fraud, deceit and misrepresentation".
Perhaps, the petitioner would have been entitled to decline to answer the interviewer's questions, without prejudicing his longshoreman's registration, on the ground of the privilege against self incrimination (see, e.g., Spevack v. Klein, 385 U. S. 511; Slochower v. Board of Educ., 350 U. S. 551) or for the *59 reason that he was not sufficiently apprised of the subject matter of the investigation and the "pertinency of the interrogation to the topic under * * * inquiry." (Deutch v. United States, 367 U. S. 456, 467-468; see DeGregory v. New Hamp. Atty. Gen., 383 U. S. 825, 829; Barenblatt v. United States, 360 U. S. 109, 123; Watkins v. United States, 354 U. S. 178, 208-209; Matter of Koota v. Colombo, 17 N Y 2d 147, 150.) Indeed, if he had truthfully answered the questions about his activities so many years before, his responses standing by themselves would not have provided a sufficient basis for the imposition of discipline. The Commission's power to revoke a longshoreman's registration because of participation in subversive activities can only be exercised against a person who "knowingly or willingly advocates the desirability of overthrowing or destroying the government of the United States by force or violence or who shall be a member of a group which advocates such desirability knowing the purposes of such group include such advocacy" (L. 1953, ch. 882, pt. I, art. VIII, § 3, subd. [b]). These provisions are explicitly directed at current membership in subversive organizations and present unlawful activities. Although the petitioner's past activities might be relevant to establish a chain of intrigue continuing into the present, his past actions alone would "not justify an inference that he presently has bad moral character." (Schware v. Board of Bar Examiners, 353 U. S. 232, 245-246; see Brigade Veterans v. SACB, 380 U. S. 513; American Committee v. SACB, 380 U. S. 503, 505; Konigsberg v. State Bar, 353 U. S. 252, 267-274; cf. DeGregory v. New Hamp. Atty. Gen., 383 U. S. 825, supra; Matter of Anonymous, 17 N Y 2d 674.)
Be that as it may, the fact of the matter is that the petitioner chose to answer the questions posed and, in so doing, lied. It is well settled that deliberately telling a falsehood under oath or practicing deceit in dealing with a government agency is a sufficient predicate for criminal prosecution, adverse regulatory action or administrative discipline even if the misrepresentation was not "material" or the deceiver would have been privileged to withhold the information in the first instance. (See, e.g., Dennis v. United States, 384 U. S. 855; United States v. Williams, 341 U. S. 58, 65-68; Communications Comm. v. WOKO, 329 U. S. 223, 227; Kay v. United States, 303 U. S. 1; United States v. Kapp, 302 U. S. 214; *60 People v. Samuels, 284 N.Y. 410, 414; Matter of Skaricia v. Waterfront Comm., 20 A D 2d 871; Penal Law, § 1620-b; cf. Matter of Anonymous, 17 N Y 2d 674, supra; Matter of College Point Wine & Liqs. v. O'Connell, 296 N.Y. 752.) In these circumstances, as the Supreme Court observed in the WOKO case (329 U. S., at p. 227), "The fact of concealment may be more significant than the facts concealed. The willingness to deceive a regulatory body may be disclosed by immaterial and useless deceptions as well as by material and persuasive ones." In the case before us, the petitioner's registration as a longshoreman was revoked precisely for such "willingness to deceive" the Waterfront Commission, and he may not now be heard to claim that he was ill advised either to practice such deception or even to answer the questions posed.
Moreover, in view of the petitioner's fraud and deception, there is ample basis for denying him the opportunity of challenging the constitutionality of the statute (L. 1953, ch. 882, pt. I, art. VIII, § 3, subd. [b]) which authorizes the Commission to discipline longshoremen for subversive activities. (See, e.g., Dennis v. United States, 384 U. S. 855, supra; Kay v. United States, 303 U. S. 1, 6, supra; United States v. Kapp, 302 U. S. 214, 217-218, supra.) In the Dennis case (384 U. S. 855, supra), several officers of a labor union were convicted for filing false affidavits that they were not members of the Communist party in purported satisfaction of section 9(h) of the Taft-Hartley Law, a provision which was subsequently repealed. They interposed the defense that section 9(h) was unconstitutional, a question which the Supreme Court had never previously considered, although it had invalidated the successor to section 9(h) as a "bill of attainder" (U. S. Code, tit. 29, § 504; see United States v. Brown, 381 U. S. 437). In holding that the defendants lacked standing to raise the constitutional issue, the court declared that "a claim of unconstitutionality will not be heard to excuse a voluntary, deliberate and calculated course of fraud and deceit. One who elects such a course as a means of self-help may not escape the consequences by urging that his conduct be excused because the statute which he sought to evade is unconstitutional. This is a prosecution directed at petitioner's fraud. It is not an action to enforce the statute claimed to be unconstitutional" (384 U. S., at p. 867).
*61 This principle would manifestly justify our declining to pass upon the constitutional argument advanced by the petitioner. However, it is settled that judicial reluctance to decide questions which need not be reached must give way when a case raises "important constitutional issues" and the "controversy is of a character which is likely to recur". (East Meadow Community Concerts Assn. v. Board of Educ., 18 N Y 2d 129, 135; see Dombrowski v. Pfister, 380 U. S. 479, 486-487; Abington School Dist. v. Schempp, 374 U. S. 203, 224, n. 9; United States v. Raines, 362 U. S. 17, 21-23.) The present is  and this also represents the view of the dissenting judges  such a case.
The Supreme Court has recently been invalidating State statutes very similar to the legislation before us on the ground that they "suffer from impermissible `overbreadth'" and have a "stifling effect" on "freedom of association". (Keyishian v. Board of Regents, 385 U. S. 589, 607, 609; see Elfbrandt v. Russell, 384 U. S. 11; Dombrowski v. Pfister, 380 U. S. 479, supra.) To be sure, in construing an interstate compact such as the one before us, we are dealing with a matter of Federal rather than State law. (See, e.g., Petty v. Tennessee-Missouri Comm., 359 U. S. 275; Dyer v. Sims, 341 U. S. 22; cf. De Veau v. Braisted, 363 U. S. 144, 150-151.) There is some assurance, therefore, that, if the Federal courts were called upon to consider these provisions, they would not apply the constitutional tests merely to the bare wording of the statutes, as they normally do with State legislation which has not been construed by State courts (see, e.g., Keyishian v. Board of Regents, 385 U. S. 589, supra), but would put their own gloss on the statutory language in accordance with their customary procedure for dealing with congressional enactments. (See, e.g., Dennis v. United States, 341 U. S. 494; cf. Linehan v. Waterfront Comm., 347 U. S. 439, 441 [DOUGLAS, J., dissenting].) However, since New York is a party to the compact, this body of Federal law is one for which our courts have a particular responsibility to fashion. Accordingly, we must not hesitate to construe the compact rather than leave the task to the Supreme Court or, perhaps, to some other Federal court.
It may not be doubted that subversive activities are a sufficient threat to the safe and peaceful operation of the waterfront as to form an adequate basis for giving the Commission the power *62 to exclude persons engaged in such activities from the waterfront area. The only question is whether the compact goes too far in defining subversive activities. In the past, when faced with the choice of declaring a statute unconstitutional under the First Amendment or interpreting the legislation in such a way as to supply a missing constitutional safeguard, neither this court nor the Supreme Court has hesitated "to embrace [the course] which will preserve [the statute's] validity." (People v. Finkelstein, 9 N Y 2d 342, 345; see People v. Epton, 19 N Y 2d 496; Dennis v. United States, 341 U. S. 494, supra.) In the Keyishian case (385 U. S. 589, supra), the Supreme Court indicated that section 105 of this State's Civil Service Law was unconstitutional because (1) it seemingly proscribed as unlawful advocacy of criminal anarchy a "mere statement about abstract doctrine" (385 U. S., at p. 599); (2) it failed to define "the extent to which [advocacy] must be intended to and tend to indoctrinate or incite to action in furtherance of the defined doctrine" (385 U. S., at p. 599); and (3) it punished for "[m]ere knowing membership [in a subversive organization] without a specific intent to further the unlawful aims of [the] organization" (385 U. S., at p. 606; see Elfbrandt v. Russell, 384 U. S. 11, 17-19, supra).
Accordingly, as required by the First Amendment, we read the Waterfront Commission Act and construe the clause, "knowingly or willingly advocates the desirability of overthrowing the government of the United States by force or violence," to proscribe only that type of advocacy (1) which is intended to indoctrinate or incite to action in furtherance of the defined doctrine and (2) which is accompanied by a "clear and present danger" of success. (See Keyishian v. Board of Regents, 385 U. S. 589, 599, supra; Yates v. United States, 354 U. S. 298, 318-326; Dennis v. United States, 341 U. S. 494, 505, supra; People v. Epton, 19 N Y 2d 496, supra.) In addition, the clause, dealing with "a member of a group which advocates [the desirability of overthrowing or destroying the government of the United States by force or violence], knowing the purposes of such group include such advocacy", should be understood to condemn only "active" membership which the member pursues with a specific intent to further the unlawful goals of the organization. (See *63 Keyishian v. Board of Regents, 385 U. S. 589, 608, supra; Elfbrandt v. Russell, 384 U. S. 11, 19, supra.)[4]
Having sustained the Commission's statutory authority and its power to impose discipline in this case, we turn to the point  the only one on which there is disagreement  as to whether permanent revocation of the petitioner's registration as a longshoreman was too harsh. (CPLR 7803, subd. 3; see Matter of Walker v. Murphy, 15 N Y 2d 650.) As previously indicated, the petitioner lied in giving information which he may very well have been privileged to withhold and, had he told the truth, nothing untoward would have resulted, since the activities in question occurred more than 18 years ago, when he was in his teens. Moreover, ignorance and misplaced fears probably accounted for his embarking on a course of deceit. Although he was apprised of his right to be represented by counsel at the interviews, he did not take advantage of that right, most likely for economic reasons since he was unemployed and receiving unemployment benefits during part of the period in which the interviews were held. Finally, he had been a longshoreman for more than 10 years prior to revocation of his registration in 1964. There is no indication in the record that during any of that time he ever engaged in unlawful or subversive activities or did anything else, apart from his deception in the interviews, which would justify revoking his longshoreman's registration and depriving him of his livelihood. Although we do not condone his wrongdoing, we do feel that under the circumstances the discipline imposed by the Commission was too severe. A period of suspension would have been more appropriate and, since his registration was terminated by the Commission nearly three years ago, any suspension beyond the date of this decision would constitute an abuse of discretion as a matter of law. (See Matter of Donohue v. New York State Police, 19 N Y 2d 954.)
The order of the Appellate Division should be reversed, without costs, and the matter remanded to the Waterfront *64 Commission for further proceedings in accordance with this opinion.
Order reversed, etc.
NOTES
[1] A checker is defined in section 5-a of the Waterfront Commission Act (L. 1953, ch. 882, § 5-a, subd. [5], as added by L. 1957, ch. 188) as "a longshoreman who is employed to engage in direct and immediate checking of waterborne freight or of the custodial accounting therefor or in the recording or tabulation of the hours worked at piers or other waterfront terminals by natural persons employed by carriers of freight by water or stevedores."
[2] Having withdrawn his application to be a checker, he did not seek relief from that portion of the Commission's order denying such application.
[3] The Waterfront Commission was originally set up in 1953 in an interstate compact enacted by the Legislatures of New York and New Jersey and approved by the Congress (L. 1953, ch. 882; [N.J.] L. 1953, ch. 202; 67 U. S. Stat. 541). The compact authorized revocation of a longshoreman's registration for any "cause which would permit disqualification of such person from inclusion in the longshoremen's register upon original application" (L. 1953, ch. 882, pt. I, art. VIII, § 5, subd. [a]). In 1954, pursuant to the compact provision which permits "Amendments and supplements" to be made thereto through the enactment of uniform legislation by New York and New Jersey without the necessity of obtaining the approval of Congress (L. 1953, ch. 882, pt. I, art. XVI, § 1), the Waterfront Commission was authorized, as indicated, to deny registration for fraud, deceit or misrepresentation in connection with any interview or hearing conducted by the Commission (Waterfront Commission Act, § 5-h, subd. 3, as added by L. 1954, ch. 220, § 2).
[4] Since we are dealing with Federal law  i.e., an interstate compact which received the approval of Congress  the fact that the provisions are directed at the overthrow of "the government of the United States" presents no issue of "pre-emption". (Cf. Pennsylvania v. Nelson, 350 U. S. 497.)