In the Matter of Grand Jury Subpoena
for Gordon VERPLANK.

In the Matter of Grand Jury Subpoena
for Martin S. WEG.

Misc. Nos. 2814, 2815.

United States District Court,
C. D. California.

July 14, 1971.

**434**

Robert L. Meyer, U. S. Atty., David R. Nissen, Asst. U. S. Atty., Chief, Crim. Div., Los Angeles, Cal., for United States.

Allen D. Lenard, Los Angeles, Cal., Michael Somers, Santa Monica, Cal., William G. Smith, Los Angeles, Cal., for Gordon Verplank.

Frank S. Pestana, Los Angeles, Cal., for Martin S. Weg.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM P. GRAY, District Judge.

The local federal grand jury has acknowledged that it is currently investigating alleged widespread violations of the selective service laws. It has indicated particular interest in the alleged practices of some draft counselors in referring selective service registrants to particular dentists, psychiatrists and other medical practitioners, purportedly for draft evasion purposes. The grand jury has caused to be served a subpoena *duces tecum* upon Reverend Gordon Verplank, who is an ordained minister of the United Presbyterian Church and director of the McAlister Draft Counseling Center, which is supported by that Church. He is also Chaplain of the Claremont Colleges, and in this capacity is officially responsible for all draft counseling services afforded by the Colleges.

The subpoena requires that the witness produce "all records and documents of every description relating in any way to: Dr. Bernard Bender; any person referred to Dr. Bernard Bender; and any and all physicians, dentists or psychiatrists to whom any draft counselee has been referred by personnel at the draft counseling center of the McAlister Center for Religious Activities, and all records of all counselees so referred."

Another subpoena was served upon Martin S. Weg, D.D.S., which directs that he produce "all records and documents of every description belonging to Bernard Bender, D.D.S., or pertaining in any way to dental patients treated by Dr. Bender." Dr. Weg was a professional associate of Dr. Bender for approximately seventeen years. This relationship terminated about a year ago, and Dr. Bender allegedly has left the jurisdiction of this court.

Both Rev. Verplank and Dr. Weg have moved for orders quashing their respective subpoenas; the matters have been extensively briefed on their behalf and on behalf of the Government, and were submitted after oral argument.

*The Verplank Subpoena.*

Rev. Verplank's principal contention is that the materials sought pursuant to the subpoena are inextricably mingled with confidential communications that are privileged. He first cites the clergyman-communicant privilege, pointing out that the confidential communications by registrants often are of a spiritual nature. He next urges that, inasmuch as the staff of the McAllister Center includes attorneys, the attorney-client privilege applies. Finally, the witness asks this court to recognize a counselor-counselee privilege covering confidential communications between the McAlister Center staff and the selective service registrants who come to it for advice.

In order to develop a uniform body of rules of evidence, Rule 26 of the Federal Rules of Criminal Procedure provides that the " * * * privileges of witnesses shall be governed, except when

an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." The language of the rule, a paraphrase of a portion of the opinion in Wolfle v. United States, 291 U.S. 7, 12, 54 S.Ct. 279, 78 L.Ed. 617 (1934), suggests that there is to be flexibility and development in the interpretation of the common law applied in federal criminal cases. The Supreme Court has reaffirmed the policy of development and adaptation to modern circumstances, as suggested by the rule. For example, in a case concerned with the scope of the marital privilege, the opinion stated that "[t]he governing principles are not necessarily as they had existed at common law." Lutwak v. United States, 344 U.S. 604, 614, 73 S.Ct. 481, 487, 97 L.Ed. 593 (1953). Therefore, this court recognizes its obligation to consider the claims of privilege "in the light of reason and experience," rather than to apply slavishly a particular common law doctrine.

As the Government asserts, the clergyman-communicant privilege was not generally recognized at common law. Wigmore, 8 Evidence § 2394 (McNaughton rev. 1961). However, modern law, nurtured in a climate of religious freedom and tolerance, has given sanction to such a privilege. It has been established by statute in nearly two-thirds of the states and has also been recognized by court decision in Mullen v. United States, 105 U.S.App.D.C. 25, 263 F.2d 275 (1958). Of particular significance to the present trend in the law is the fact that such a privilege is contained in the revised draft of Proposed Rules of Evidence for United States Courts and Magistrates, 51 F.R.D. 315, 371 (1971). Rule 506(b),

under the heading "Communications To Clergymen," provides that "[a] person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyman in his professional character as spiritual advisor."

Professor Wigmore has listed four fundamental conditions that are recognized as necessary to establish the basis for a privilege against disclosure of communications. Wigmore, 8 Evidence § 2285 (McNaughton rev. 1961).[1] The Advisory Committee note to proposed Rule 506 adverts to these considerations and concludes that they " * * * seem strongly to favor a privilege for confidential communications to clergymen." 51 F.R.D. at 372.

This court is mindful of the broad investigatory powers of the grand jury. However, the spirit of Rule 26, coupled with the development of the common law principles evidenced by the proposed rules and *Mullen*, impel the conclusion that a clergyman-communicant privilege should be acknowledged in criminal matters in the federal courts.

Decisions as to the positions that a draft registrant will adopt in his relationships with the selective service laws and regulations often involve very deep and intimate spiritual and moral considerations. It is presumably for this reason that the board of trustees of the Claremont Colleges directed that the chaplain provide draft counseling services to the faculty and students of those institutions. It is the conclusion of this court that draft counseling services, when rendered by Rev. Verplank, are performed in the course of his function as a clergyman, and thus come within

---

1. The four fundamental conditions are:
  "(1) The communications must originate in a *confidence* that they will not be disclosed.
  "(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

  "(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered*.
  "(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation." (emphasis in original).

the privilege defined by Proposed Rule 506.

■ Originally, Rev. Verplank undertook to perform this function personally, and the creation and enlargement of a staff to assist him were made necessary by the rapid increase in the number of applicants for such counseling. It is recognized that all of the members of the counseling staff are not ordained ministers; however, the proposed rule does not require such an attainment in order for the privilege to apply. The Advisory Committee note states that "[a] fair construction of the language requires that the person to whom the status is sought to be attached be regularly engaged in activities conforming at least in a general way with those of * * * an established Protestant denomination, though not necessarily on a full-time basis." 51 F.R.D. at 372. Under the circumstances here concerned, it would appear that the activities of the other counselors at the McAlister Center conform "at least in a general way" with a significant portion of the activities of a minister of an established Protestant denomination, to the extent necessary to bring them within the privilege covering communications to clergymen.

Additionally, the relationship between Rev. Verplank and the other counselors at the Center appears to be closely akin to the relationships between a lawyer and the nonprofessional representatives that he engages to assist him in serving his clientele. It is clear, and proposed Rule 503, 51 F.R.D. at 361, specifically provides, that the lawyer-client privilege covers such representatives. According to Wigmore, the inclusion of such representatives stems from the fact that their assistance is indispensable to the work of the attorney. Wigmore, 8 Evidence § 2301 (McNaughton rev. 1961). It seems to me that this analogy is applicable here, and that the failure of the proposed Rule 506 to make reference to "a representative" of the clergyman is due to the fact that clergymen do not normally undertake counseling of this magnitude and thus do not employ such assistants.

On the basis of the foregoing, this court concludes that for Rev. Verplank to respond fully to the subpoena would necessarily entail revelation of protected confidences.

This court also believes that "reason and experience" would justify recognition of a draft counselor-counselee privilege akin to that of the attorney-client privilege. The historic reason for the protection of attorney-client confidences is that the client, and ultimately society, are best served if the client receives competent legal advice. Full disclosure of all facts, without fear, is regarded as a necessary adjunct to that advice. This principle would seem to apply with equal force to the paralegal draft counselor-counselee relationship.

The system that has been created to administer the selective service laws has no place for attorney participation on behalf of the registrant. ABA Comm. on Unauthorized Practice of Law, Inform. Op. A (April 1968). However, these laws and regulations are voluminous and inherently complex, and the normal registrant could hardly be expected to ascertain his rights and responsibilities without help. And yet, his encounter with his draft board may be one of the most significant experiences in his life. Under these circumstances, it must have been intended, or at least recognized, by Congress that the registrant would seek aid from persons in the community who possess expertise in the field, whether those persons are attorneys or not.

The ABA report takes the position that since the selective service system contemplates the giving of advice about these laws and regulations by non-lawyers, state unauthorized practice laws may not interfere with that scheme. It is equally reasonable to extend the protection of privilege to the giving of such advice in order not to hamper unduly the system established by Congress.

Nevertheless, this court declines to recognize a draft counselor-counselee priv-

ilege for two reasons. Initially, it is not necessary to this decision, since the court has concluded that the information from counselee files sought by the subpoena is within the ambit of the clergyman-communicant privilege. Secondly, Rule 501 of the proposed rules states that:

"Except as otherwise required by the Constitution of the United States or provided by Act of Congress, and except as provided in these rules or in other rules adopted by the Supreme Court, no person has a privilege to:

"(1) Refuse to be a witness; or

"(2) Refuse to disclose any matter; or

"(3) Refuse to produce any object or writing; or

"(4) Prevent another from being a witness or disclosing any matter or producing any object or writing." 51 F.R.D. at 356.

This court has concluded that the proposed rules should be accorded substantial weight as evidence of the latest thinking in the area of privilege, and therefore, that only the privileges therein specified should be recognized in the absence of action by the Supreme Court or Congress. A draft counselor-counselee privilege is not contained in the proposed rules, and the attorney-client privilege therein provided specifically requires that the former be a person authorized (or reasonably believed to be authorized) to practice law. Consequently, this court declines to recognize a draft counselor-counselee privilege in this case, and the attorney-client privilege is too restrictive to cover such a relationship.

■ Rev. Verplank also contends that his subpoena adversely affects First Amendment rights of freedom of speech and association. It would appear that First Amendment activities are involved in the operation of the McAlister Center. All citizens have a right to receive accurate, up-to-date information concerning the selective service system and army induction procedures, as well as a right to associate in order to obtain such information. *See*, NAACP v. Alabama,

357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). Consequently, there is nothing inherently sinister in the efforts of the McAlister Center to collect and disseminate that material. This court also recognizes that in order for the Center to give valid advice to registrants, it must first obtain personal information from them. The possibility that such information will be revealed indiscriminately could certainly deter many registrants from seeking or receiving information from the Center. Production of lists of medical personnel acting as consultants to the Center may also have an adverse effect on the willingness of any professionals to be connected in any way with its activities. Thus, a definite impact on the exercise of First Amendment rights may be readily discerned.

■ The Supreme Court has considered conflicts between investigatory needs and First Amendment freedoms on several occasions. *See*, DeGregory v. Attorney General of New Hampshire, 383 U.S. 825, 86 S.Ct. 1148, 16 L.Ed.2d 292 (1966); Gibson v. Florida Legislative Investigation Comm., 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); Sweezy v. New Hampshire, 354 U.S. 234, 235, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957). Where encroachment upon these freedoms is a threat, the court has imposed upon the Government the burden of demonstrating an "adequate foundation" or "compelling need" for the information sought. In Caldwell v. United States, 434 F.2d 1081 (9th Cir. 1970), the Court of Appeals imposed a similar burden with respect to grand jury testimony which threatened to hinder the exercise of First Amendment freedoms. The Court of Appeals in *Caldwell*, adopted the following statement by the District Court:

"When the exercise of the grand jury power of testimonial compulsion so necessary to the effective functioning of the court may impinge upon or repress First Amendment rights or freedom of speech, press and association, which centuries of experience

have found to be indispensable to the survival of a free society, such power shall not be exercised in a manner likely to do so until there has been a clear showing of a compelling and overriding national interest that cannot be served by any alternative means."
434 F.2d at 1086.

The Government has neither advanced a foundation nor demonstrated a compelling need for the information sought by this subpoena. It has merely stated that it desires comprehensive information from Center files because it "is seeking evidence concerning the curious practice of certain 'draft counselors' to send or refer Selective Service registrants to particular dentists, physicians, psychiatrists and others for assistance in evading military service." However, as pointed out by counsel for Rev. Verplank, numerous physical and mental disqualifications are contained in the selective service and army regulations. Therefore, there is nothing "curious" or illegal about seeking medical advice in order to determine the applicability of a particular regulation.

This court is in no sense critical of the subject grand jury investigation or of its purposes. However, the showing made for the need for the subpoenaed materials does not transcend the adverse effect on First Amendment rights.

On the basis of the foregoing, the motion to quash the subpoena to Rev. Gordon Verplank, as Custodian of Records, McAlister Center, Draft Counseling Center, is granted to the extent that it requires production of the records of counselees or lists of physicians, dentists, or psychiatrists to whom counselees have been referred.

*The Weg Subpoena.*

■ Dr. Weg contends that the subpoena served upon him violates the Fourth Amendment to the United States Constitution because it is overly broad. His affidavit indicates that in order to respond thereto, he would have to search approximately fifteen thousand records covering the seventeen-year span of his association with Dr. Bender. This contention is well taken. The United States Attorney has indicated no opposition to restricting the subpoena to production of the orthodontia records of male patients between the ages of eighteen and twenty-six for the past three years. Therefore, the subpoena will be so limited, and, as limited, the subpoena is adjudged not to violate the Fourth Amendment.

■ Dr. Weg also argues that the records of Dr. Bender's patients contain confidential communications protected by the physician-patient privilege. This privilege, like the clergyman-communicant privilege, was not recognized at common law, but has been established by statute in numerous states. Wigmore, 8 Evidence § 2380 (McNaughton rev. 1961). However, the analogy ends there. Modern writers generally question the wisdom of the privilege, and, significantly, it is not contained in the Proposed Rules of Evidence. The only medical privilege is found in proposed Rule 504 which protects confidential communications between a psychotherapist and his patient. The Advisory Committee note to Rule 504 discusses the reasons for the decision not to include a general physician-patient privilege, and points out that even where such a privilege is established by statute, " * * * the exceptions which have been found necessary in order to obtain information required by the public interest or to avoid fraud are so numerous as to leave little if any basis for the privilege." 51 F.R. D. at 367. One of those necessary exceptions frequently has been made with respect to all criminal proceedings. *E. g.*, Cal.Evidence Code § 998 (West 1966). This court has been unable to locate any federal criminal case granting clear recognition to the privilege. For all of the hereinabove mentioned reasons, it is concluded that there is no basis for extending the privilege to Dr. Bender's records in this case.

■ Finally, Dr. Weg claims that disclosure of the records would result in an invasion of the clients' privacy. He bases this contention upon the case of Gris-

wold v. Connecticut, 381 U.S. 749, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), wherein the Supreme Court reversed the conviction of a physician who had given married couples advice on contraceptive methods. The thrust of the *Griswold* decision is to protect the privacy of the marital relationship, which is hardly analogous to the dentist-patient relationship.

Dr. Weg and the Government have submitted to the court substantially identical forms that are reported to be typical of the information sheets upon which a dentist's records are normally kept. Apart from the provision for certain identifying information and a few questions about physical conditions that would be relevant to contemplated oral surgery, the form is almost exclusively devoted to description of dental work needed and dental work done, and the consequent financial charges and payments. Such records would reveal little, if anything, that would not be divulged by looking into the patient's mouth both before and after a visit to the dentist.

The subpoena served upon Dr. Weg will be limited to the extent hereinabove set forth, and in all other respects the motion to quash such subpoena is denied.

The clerk is directed to mail copies of this memorandum and order to the United States Attorney and to counsel for the parties.