ROBERT C. ZIMMERMAN, Secretary of State
You request my opinion as to whether the provisions of sec. 12.45, Stats., would prohibit you from certifying the names of independent candidates for ballot positions on the November, 1972, general election ballot, if the ballot designation for such candidates indicated "Communist Party U.S.A." *Page 284 
Section 8.20 (2) (a), Stats., provides that the nomination of an independent candidate is by nomination papers, which may designate "the party or principle he represents, if any, in five words or less." The designation given in the nomination papers filed with your office is certified for inclusion, with the candidate's name, on the official ballot. Sec. 7.08 (2), Stats.
Section 12.45, Stats., provides, in part, as follows:
"Political party recognition and qualification. (1) Notwithstanding any other provisions of this title, no partyshall be recognized or qualified to participate in any election which is directly or indirectly affiliated, by any means whatsoever, with the communist party of the United States, . . .
"(2) The secretary of state shall, with the advice and consent of the attorney general, determine which parties are qualified to participate in any election. Such determination shall be subject to review under ch. 227.
"(3) This section is declared to be enacted in the exercise of the police power of this state for the protection of the public peace, safety and general welfare of the residents of this state." (Emphasis added.)
In my opinion, sec. 12.45, Stats., does not prohibit properly nominated independent candidates for public office from appearing on the November, 1972, general election ballots, even though they would appear with the designation "Communist Party U.S.A."
As I read sec. 12.45, Stats., its prohibitions extend only to the recognition of certain political parties or their participation in elections. The Communist Party of the United States is not a "recognized" political party in the state of Wisconsin. In order for a political party to be "recognized," and entitled to a party ballot, it must comply with the various provisions of sec. 5.62, Stats. Technically, therefore, the reference to the Communist Party on a candidate's nomination papers, and subsequently on the official ballot, is a statement of the "principle he represents" rather than a "party" designation. For instance, sec. 8.20 (9), Stats., provides that: *Page 285 
"Persons nominated by nomination papers without party designation shall be placed on the official ballot to the right or below the party candidates in their own column designated `Independent'. If the candidate's name already appears under a party it shall not be listed again."
The legislative history of sec. 12.45, Stats., provides further support for the conclusion that the statute is not intended to deny individuals, as opposed to parties, the right to participate in elections. In January, 1947, after a Communist Party candidate for Governor had been permitted to appear on the ballot as an independent candidate in the 1946 general election, Senate Bill 44 was introduced in the Wisconsin Legislature. This bill would have clearly prohibited individuals affiliated with the Communist Party of the United States from participating as candidates in any election. The bill proposed to amend an earlier version of present sec. 12.45 (1), Stats., so that it would read as follows:
"Notwithstanding any other provisions of this chapter, no party shall be recognized or qualified to participate in any election,and the name of no person shall be permitted to appear as acandidate for an office on any primary or election ballot under aparty designation, as an independent or otherwise, which or who
is directly or indirectly affiliated, by any means whatsoever, with the communist party of the United States, . . ." (Emphasis shows proposed amendment.)
The bill would also have created a subsec. (2a), which would have directed election officials to determine the names of persons prohibited a place on the ballot under subsec. (1). The bill did not become law.
The foregoing interpretation of sec. 12.45, Stats., also appears to be consistent with an interpretation given a roughly similar federal enactment, the Communist Control Act of 1954,68 Stat. 775, 50 U.S.C. secs. 841-42. The latter provision reads, in part, as follows:
"The Communist Party of the United States, or any successors of such party regardless of the assumed name . . . are not entitled to any of the rights, privileges, and immunities attendant upon legal bodies created under the jurisdiction of the laws of the United States or any political subdivision thereof; . . ." *Page 286 
In Mitchell v. Donovan (1968), 290 F. Supp. 642, a three-judge district court in Minnesota considered this, and other language of the Federal Act which had apparently been relied upon by the Secretary of State for the state of Minnesota, as grounds for refusing to accept the nomination papers of Communist Party candidates for President and Vice President of the United States in 1968 general election. Although the case subsequently became moot, and the court did not reach a decision on the merits, a "Memorandum for the United States as Amicus Curiae" was filed by the United States Attorney, at the request of the court. The position of the U.S. Attorney was characterized by the court, at290 F. Supp., p. 644, as follows:
". . . He [the U.S. Attorney] urges that the Act is meant to disable the Communist Party as a party only and not its members, and he suggests that the right of plaintiffs Mitchell and Zagarell to appear on the ballot, and the right of the nominees for presidential electors to be credited with the votes cast for Mitchell and Zagarell, depend in no degree on their status as nominees of the national or local Communist Party. He argues that, as a matter of Minnesota law, Mitchell and Zagarell are entitled to stand for office because their names have been submitted in a timely petition signed by the requisite number of qualified voters, and concludes that no `right, privilege or immunity' of the Communist Party as such is involved in this lawsuit. . . ."
My previously expressed opinion concerning the application of sec. 12.45, Stats., is obviously based primarily on an interpretation of the language of the statute itself. Such interpretation is fully in accord with the provisions of sec.5.01 (1), Stats., which provides that the election laws, including the Corrupt Practices Act, sec. 12.01, et seq., must be construed liberally so as to give effect to the will of the electors. State ex rel. Zimmerman v. Carpenter (1949), 254 Wis. 610,37 N.W.2d 469. In light of such conclusion, the more subtle and complicated questions dealing with constitutionality and federal preemption need not be considered here. It should be noted, however, that federal anti-subversive legislation — the Smith Act (18 U.S.C. sec. 2385), the Internal Security Act of 1950, as amended (50 U.S.C. sec. 781, et seq.), and the Communist Control Act of 1954 (see 50 U.S.C. secs. 841, 842) — has been held to have so completely *Page 287 
occupied the field of sedition as to supersede even those state laws which only purport to supplement federal law. Commonwealthof Pennsylvania v. Nelson (1956), 350 U.S. 497, 76 S.Ct. 477,100 L.ed. 640. See also DeGregory v. Attorney General of NewHampshire (1966), 383 U.S. 826, 86 S.Ct. 1148, 16 L.ed 2d 292;McSurely v. Ratliff (1967), 282 F. Supp. 848 (D.C. Ky), appealdismissed, 390 U.S. 412, 88 S.Ct. 1112, 19 L.ed. 2d 1272; Statev. Jahr (1971), 114 N.J. Super. 181, 275 A.2d 461.
RWW:JCM