DIANE W. CROCKER, Plaintiff-Appellee, v. THE REVOLUTIONARY COMMUNIST PROGRESSIVE LABOR PARTY *et al.*, Defendants-Appellants.

First District (1st Division)   No. 87—2432

Opinion filed December 30, 1988.

Steven R. Gilford and Susan M. Kozik, both of Mayer, Brown & Platt, and Harvey M. Grossman and Jane M. Whicher, both of Roger Baldwin Foundation of the American Civil Liberties Union, Inc., both of Chicago, for appellant.

John M. Bowlus, of Chicago, for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal from certain orders certified for appeal by the trial court which held the defendant, William Caref, in contempt and ordered his incarceration for his refusal to answer certain questions he was directed to answer at his deposition in a libel case brought by plaintiff, Diane W. Crocker, M.D. On appeal, defendant contends that in a civil suit brought by a public official he is protected by the first amendment from the compelled disclosure of the identities of the members of the minority political parties with whom he has chosen to associate.

On August 15, 1986, plaintiff filed an action for libel against the Revolutionary Communist Progressive Labor Party (PLP), an unincorporated association, and William Caref seeking a temporary restraining order, a preliminary and permanent injunction and damages in the amount of $15 million. The defendant Caref is a political organizer and the chairman of the Chicago organization of the PLP. The complaint alleges that on November 1, 1985, the plaintiff doctor assumed her duties as chairman of the pathology department and associate chairman of laboratory medicine at Cook County Hospital. At the time she assumed her duties the residency program at the hospital had been placed on probation and she was recruited to undertake to upgrade the standards and performance of the pathology department. The plaintiff supervised a number of physicians and about 95 laboratory technicians and hospital employees.

Beginning on or about July 16, 1986, the complaint further alleges that the defendants published and caused to be circulated throughout Cook County Hospital a newsletter titled the "CCH Arrow." The newsletter contained a letter to the editor which was signed by the "Concerned Pathology Department Staff" in which the plaintiff is referred to as a "racist boss on the warpath at CCH" who is "supposed to be a physician." The newsletter also contained an article which criticized plaintiff for disrupting the entire pathology department. It further claims that plaintiff's behavior was aimed at black and foreign workers and doctors and called for her termination. In addition the complaint further alleges that on August 4, 1986, the defendants circulated and posted throughout Cook County Hospital another issue of the CCH Arrow which contained the headlines "Fire Racist Crocker of Pathology" and "Fire Diane Crocker! Smash Racist Harassment!"

On plaintiff's motion, on August 20, 1986, a temporary restraining order was entered which restrained the defendants from posting or circulating any document urging that plaintiff be discharged from her position and from interfering with her property and contract rights. That order was twice extended until September 26, 1986, when it was vacated. On October 2, 1986, the defendants filed an answer denying the allegations of the complaint and stated that the defendants were not the publishers of the CCH Arrow and that the newsletter was published by the Cook County Hospital Chapter of the International Committee Against Racism (INCAR).

On December 22, 1986, the defendants filed a motion for summary judgment contending that neither Caref nor the PLP had published, posted or circulated the letter or article in question. Caref's supporting affidavit stated that the association of individuals known

as the PLP has never conducted activities under the name of INCAR or in any way assumed the identity of the Cook County Hospital chapter of INCAR. Caref stated that he is a member of the national association of INCAR but not the local Cook County Hospital chapter.

Plaintiff responded to defendants' motion by seeking Caref's deposition. In doing so, plaintiff relied upon subsequent editions of the CCH Arrow which solicited funds for the PLP and encouraged IN-CAR supporters to support the PLP. The defendants argued that the subsequent newsletters upon which plaintiff relied in seeking Caref's deposition stated repeatedly that the publications which are the subject of her complaint were published by INCAR. On this basis, the defendants contend that they were not responsible for the publications and that the purpose of the depositions was to learn the identities of parties not named as defendants. The trial court ordered that the deposition go forward.

On January 9, 1987, defendant appeared for his deposition. He was questioned concerning his personal background, his education and employment history and about his experience with labor organizations and his association with the PLP. During the deposition, Caref testified that neither he nor the PLP published or was responsible for the letter to the editor or the article which were the subject of plaintiff's lawsuit. He reiterated his prior statement that the letter and article were published by INCAR, which was a separate organization independent of the PLP. During the deposition Caref declined to answer questions seeking the names of members of the PLP and INCAR. On February 6, 1987, plaintiff moved to compel Caref to answer certain questions and on March 10, 1987, the trial court granted plaintiff's motion and ordered Caref to answer the following six questions: (1) the name of the president of PLP; (2) who is on the central committee; (3) the number of people on the Chicago steering committee of PLP; (4) who in the Cook County INCAR group edits the CCH Arrow; (5) identify the person to whom the defendant delivered a copy of the summons and complaint in this case; and (6) did he discuss the publication of the CCH Arrow of August 4, 1986, with anyone in the Cook County INCAR Group.

In accordance with the trial court's order, Caref appeared for the continuance of his deposition on March 23, 1987. He continued to answer questions about the organization and purpose of the PLP and INCAR. He also continued, however, to refuse to identify the members of these organizations.

On April 20, 1987, plaintiff filed a motion for sanctions and a rule to show cause. On May 7, 1987, the trial court, after hearing argu-

ments, ordered that the sheriff take defendant Caref into custody and hold him in the Cook County jail until he answered the certified questions which had been propounded. On May 29, 1987, defendants filed a motion for reconsideration or, in the alternative, for a stay pending appeal. Following a hearing on July 10, 1987, the trial court again held defendant Caref in contempt and ordered his incarceration until he answered the propounded questions. The trial court noted that the case presented serious constitutional issues and stayed its order pending appeal. The trial court retained jurisdiction for all purposes including the continuation of Caref's deposition on issues other than identifying members of his political associations.

■ On appeal, defendants contend that the first amendment protects defendant Caref and the members of the PLP and INCAR from compelled disclosure of their political associations. The plaintiff maintains that the order directing Caref to answer the certified questions does not violate his first amendment rights since no inquiry is made into his political beliefs and no membership lists are sought. The first amendment to the United States Constitution guarantees to each person the rights of freedom and privacy of association and belief. (*Brown v. Socialist Workers '74 Campaign Committee* (1982), 459 U.S. 87, 74 L. Ed. 2d 250, 103 S. Ct. 416; *Buckley v. Valeo* (1976), 424 U.S. 1, 46 L. Ed. 2d 659, 96 S. Ct. 612; *NAACP v. Button* (1963), 371 U.S. 415, 9 L. Ed. 2d 405, 83 S. Ct. 328; *Bates v. City of Little Rock* (1960), 361 U.S. 516, 4 L. Ed. 2d 480, 80 S. Ct. 412.) In order to protect these rights, the courts have held that a person cannot be compelled to disclose his or her political association, or the names of members of political organizations, absent a compelling and overriding public interest. (*Tashjian v. Republican Party* (1986), 479 U.S. 208, 93 L. Ed. 2d 514, 107 S. Ct. 544; *Brown*, 459 U.S. 87, 74 L. Ed. 2d 250, 103 S. Ct. 416; *NAACP v. State of Alabama ex rel. Patterson* (1958), 357 U.S. 449, 2 L. Ed. 2d 1488, 78 S. Ct. 1163.) This analysis applies with equal force whether the plaintiff is seeking wholesale disclosure of membership lists or more limited disclosures of the identities of specific members of a dissident organization. *De Gregory v. Attorney General* (1966), 383 U.S. 825, 16 L. Ed. 2d 292, 86 S. Ct. 1148; *Gibson v. Florida Legislative Investigation Comm'n* (1963), 372 U.S. 539, 9 L. Ed. 2d 929, 83 S. Ct. 889.

In the case at bar, it is our opinion that the defendants have made a sufficient showing that their first amendment rights have been implicated and there is an insufficient showing of a compelling public interest which supports the trial court's orders compelling defendant to answer certain questions during discovery. In *Adolph Coors Co. v.*

*Movement Against Racism & the Klan* (11th Cir. 1985), 777 F.2d 1538, a libel action was brought by the Coors Company, the Coors Foundation and two members of the Coors family against the defendants. The defendants had allegedly libeled the Coors plaintiffs when they identified them closely with the Klu Klux Klan in a slide show presentation. During discovery, the Coors plaintiffs sought information concerning the specific individuals who had sold, rented or exhibited the allegedly libelous slide program. Following the analysis established by the Supreme Court in *Brown*, the court affirmed the trial court's refusal to compel disclosure of the identities of the defendants' members and employees, stating:

> "Such compelled disclosures would, of course, be constitutionally excessive; [defendants] refused to release this data, arguing correctly that the First Amendment made such information privileged." (777 F.2d at 1540.)

The court's holding was based on affidavits suggesting harassment of people associated with the defendants and stating that the Coors Company participated with other employers and law enforcement agencies in "blacklisting" political and civil rights activists like the defendant organization.

Similarly, in the case at bar, defendants have alleged that disclosure of the names of members of INCAR and the PLP will subject them to public and private threats, surveillance, intimidation, job firings, disciplinary actions and other reprisals as a result of their political beliefs. The defendant Caref has testified that members of INCAR and PLP maintain their anonymity for fear of public and private harassment and reprisals and that compelled disclosure would undermine the survival of these organizations and their ability to exercise their first amendment rights. The concern here appears reasonable since the plaintiff, as the chairman of the pathology department and carrying the authority which that position holds, is the person from whom members of INCAR and the PLP fear reprisals if their identities are disclosed. While we recognize the need for discovery, it is our determination that the request should be narrowly tailored to avoid disclosure of memberships.

▇ The plaintiff here has the burden of showing that the balance of interest weighs in favor of disclosure. (*Brown* 459 U.S. 87, 74 L. Ed. 2d 250, 103 S. Ct. 416.) In *Black Panther Party v. Smith* (D.C. Cir. 1981), 661 F.2d 1243, the court set forth a test for determining whether the information sought was sufficiently related to the interest asserted to permit consideration of compelled disclosure which required that (1) the information sought must be so relevant to the

party seeking disclosure that it goes to the heart of the matter, that is, it must be crucial to the party's case; and (2) the party seeking the information must have exhausted every reasonable alternative source of information. 661 F.2d at 1268.

■ In the case at bar, defendant Caref and the PLP have filed a motion for summary judgment supported by uncontradicted affidavit testimony that they were not involved in the writing or publication of the articles in question. While it may have been appropriate to permit Caref's deposition to test his assertions of noninvolvement, " 'disclosure in the course of a "fishing expedition" is ruled out in [a] first amendment case.' " (*Gulliver's Periodicals, Ltd. v. Charles Levy Circulating Co.* (N.D. Ill. 1978), 455 F. Supp. 1197, 1197, quoting *Silkwood v. Kerr-McGee Corp.* (10th Cir. 1977), 563 F.2d 433, 438.) On the record before us, we cannot say with certainty that the identities of INCAR and PLP members go to the heart of the matter and are relevant at this stage of the litigation.

Further, it is not clear on this record that plaintiff has exhausted every reasonable alternative source of information. Plaintiff has presented insufficient evidence of efforts to determine who published or disseminated the issues of the CCH Arrow which are the subject of this lawsuit, and plaintiff has not argued that she has exhausted alternative sources of the information she seeks. The record indicates that plaintiff has alternative sources of information to turn to in order to determine who wrote or published the articles in question. A litigant seeking disclosure of information protected by the first amendment cannot escape the obligation to exhaust alternative sources simply because of the fear that it would be time consuming, costly and unproductive. *Zerilli v. Smith* (D.C. Cir. 1981), 656 F.2d 705; *Carey v. Hume* (D.C. Cir. 1974), 492 F.2d 631; *Baker v. F & F Investment* (2d Cir. 1972), 470 F.2d 778.

Accordingly, for the reasons stated, we reverse the trial court's March 10, 1987, order compelling defendant Caref to answer certain deposition questions, the court's two orders dated May 7, 1987, finding defendant Caref in contempt of court for failure to answer the questions and directing his incarceration until he answered the questions, and vacate the order of July 10, 1987, whereby the court denied his motion to reconsider the above three orders. This matter is remanded for further proceedings.

Reversed in part; vacated in part and remanded.

QUINLAN and MANNING, JJ., concur.